## COMMONWEALTH *vs.* FRANK H. GOULD.

Bristol.   October 24, 1892. — April 3, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Name of Indicted Person — Variance — Intoxicating Liquors — Evidence — License — Physician's Certificate — Guilty Knowledge or Belief — Reasonable Cause to know.*

An indictment alleged a sale of intoxicating liquor to one Henry Bishop, whose name appeared at the trial to be Henri Leveque, but he himself testified that he was commonly known by the other name. *Held*, that the question of variance was one of fact for the jury.

At the trial of an indictment against a retail druggist holding a license of the sixth class under St. 1887, c. 431, for selling intoxicating liquor to a minor, the defendant offered evidence to show that the minor bought the liquor for his mother, who was sick. *Held*, that, as the sale was illegal whether made to the minor as a principal or as an agent, the evidence was rightly excluded.

A retail druggist, who holds a license of the sixth class under St. 1887, c. 431, is bound at his peril to keep within the condition of his license that no sale or delivery shall be made to a minor " either for his own use, the use of his parent, or of any other person," (Pub. Sts. c. 100, § 9, cl. 4,) and such a sale or delivery is

illegal even if the purchaser had the appearance of being of full age and even though the sales were made to him in the honest belief that he was an adult.

The certificate of a purchaser of intoxicating liquor given, in due form, to a retail druggist who holds a license of the sixth class under St. 1887, c. 431, stating that the liquor is wanted for medicinal purposes, even though the certificate is accompanied by the prescription of a physician which calls for the liquor, does not legalize the sale if the liquor is really bought to be used as a beverage and is sold by the druggist with the knowledge or belief that it is bought for that purpose.

If a sale of intoxicating liquor is made by a retail druggist who holds a license of the sixth class under St. 1887, c. 431, upon a certificate, in due form, stating that the liquor is wanted for an authorized purpose, and if the purchaser in fact wants it for that purpose the sale is lawful even though the druggist sells with guilty intent, believing that the liquor is wanted for an unauthorized purpose.

In order to prove that a retail druggist holding a license of the sixth class under St. 1887, c. 431, has made an illegal sale of intoxicating liquor, the government must prove, not only that the liquor was really bought for an unauthorized purpose, but also that it was sold by the druggist with guilty knowledge or belief.

At the trial of an indictment against a retail druggist, holding a license of the sixth class under St. 1887, c. 431, for the illegal exposing and keeping for sale of intoxicating liquors, the government relied upon evidence of illegal sales, and proved that numerous sales of small quantities of liquor had been made to various persons upon certificates stating that they wanted the liquor for medicinal purposes. Some of these purchasers were then permitted to testify, for the government, as to the real purpose for which they had bought the liquor, their evidence having a tendency to show that they really wanted it for a beverage, and that their certificates were false and fraudulent. *Held*, that, although the witnesses might have declined to answer the questions on the ground that their answers might tend to criminate themselves, the defendant could not avail himself of this objection. *Held, also*, that the evidence was competent to show that the liquor was in fact wanted for an unlawful purpose, and rightly admitted. *Held, also*, for the same reason, that the testimony of witnesses, who had bought at the defendant's store pints or half-pints of whiskey or rum, ostensibly for medicinal purposes, from ten to eighteen times during each of the six months covered by the indictment, that during the same period they had bought elsewhere an equal amount of liquor in similar quantities, was rightly admitted, although it did not appear that the defendant had any knowledge of purchases made elsewhere. *Held, also*, that the evidence of a witness for the government who was acquainted with these purchasers, and had seen each frequently during the period covered by the alleged illegal sales, that throughout that period they all appeared to be in good health, was competent either to show that the liquor was in fact wanted for an unlawful purpose, or to show guilty knowledge or belief on the part of the defendant, and was rightly admitted.

"Reasonable cause to know" is not equivalent to belief or knowledge; and when the government undertakes to prove that a retail druggist, holding a license of the sixth class under St. 1887, c. 431, has made illegal sales of intoxicating liquors, it is not enough for the government to prove that the defendant sold the same having reasonable cause to know or believe that they were bought for unauthorized purposes, but it must prove that the defendant made the sales actually knowing or believing that such was the fact.

INDICTMENT charging the defendant in the first count with un-
lawfully exposing and keeping for sale intoxicating liquors from
May 1, 1891, to the first Monday of November, 1891, and in the
sixth and seventh counts with unlawfully selling intoxicating
liquors to one Henry Bishop, a minor. Trial in the Superior
Court before *Bond*, J., who allowed a bill of exceptions, in sub-
stance as follows.

The defendant was a retail druggist and apothecary, carrying
on business in North Attleborough. A license of the sixth class
had been granted to him on May 1, by the selectmen of the town,
as provided in St. 1887, c. 431, § 1. All his books kept as re-
quired by said statute, § 3, were produced at the trial, and were
offered in evidence by the prosecuting officer, and a portion of
them were read to the jury. It appeared therefrom that quite a
large number of sales had been made each month, mostly in small
quantities, and that certain persons named had purchased very
frequently whiskey and rum, usually about half a pint, during
each month. The certificates for the first ten days of October
were read to the jury by the district attorney. The sales for
the first nine week days were as follows: October 1st, 87; 2d,
58; 3d, 117; 4th, Sunday; 5th, 79; 6th, 85; 7th, 50; 8th, 64;
9th, 60; 10th, 103. All these but one were certified to be for
medicinal purposes, and all but about thirty were small quanti-
ties of rum and whiskey, usually a pint or a half-pint; and all but
sixty-three were to persons who certified their residence as North
Attleborough. It further appeared from the certificates that there
were over twenty-two hundred sales in October. Certificates of
sales to fifteen persons were also read to the jury, from which
it appeared that these persons had bought liquor from ten to
eighteen times during each of the six months covered by the in-
dictment, and that most of these purchases were pints or half-
pints of whiskey and rum. Some of these persons were called
as witnesses, as hereinafter stated. Evidence was also offered
tending to show that North Attleborough was a town of about
8,000 inhabitants. All the sales made by the defendant were
made by him upon the certificate of the purchaser, signed by
him, and stating the purposes for which the liquors were wanted,
as provided in the statute. It was not contended, nor was any
evidence offered to show, that the defendant had made any sale

of any kind of liquors except upon such certificate; and it appeared by the certificates put in evidence that the liquors were in all cases wanted for medicinal, mechanical, or chemical purposes, mostly medicinal.

One Freeman, a constable living in North Attleborough, called as a witness by the government, was inquired of as to the fifteen persons whose certificates were put in evidence, as hereinbefore stated, and he testified that he was acquainted with them and saw them frequently from June to November, and that they lived in North Attleborough; and he was then allowed to state, against the defendant's objection, that they appeared to be in good health during the time from June till November. Several of the persons who had purchased most frequently of the defendant were called as witnesses by the government, and were asked by the district attorney for what purpose they purchased the liquors. To this question the defendant objected, but the court overruled the objection.

Certificates having been put in evidence from which it appeared that Thomas Saul had purchased small quantities of rum and whiskey, in June, 22 times, in July, 23 times, in August, 14 times, in September, 15 times, and in October, 18 times, he was called as a witness and testified substantially as follows : " I am acquainted with the defendant. I have always lived in North Attleborough. My business is the driving of a butcher cart. I am compelled to work sometimes sixteen hours a day, and to lift sides of beef weighing two hundred and fifty pounds. I am troubled with malaria and I bought the liquor certified to and used it to keep off malaria. I have not consulted a physician for the malaria for many years. I have lost no time from my work, and have worked steadily during the whole of the six months from May 1 to November 1. I took the liquor because I thought it did me good and kept off the malaria. I also bought liquor regularly at another place during this time, probably nearly as much as I bought at Gould's. This I used for the same purpose. I have lived in North Attleborough for a number of years."

Certificates having been put in evidence to show that John Carroll had bought liquor on an average of twelve times per month from June 1 to November 1, he was called as a wit-

ness and testified substantially as follows: "I am acquainted with the defendant. My business is that of a jeweller. I live in North Attleborough, and have for many years. Was once in the army. I bought the liquor referred to in the certificates for medicinal purposes. My disease was the chronic diarrhœa. I have had the disease since 1864, and I think the liquor does it good. I have not consulted a physician, and no physician has prescribed liquor for my disease. I work at my business the larger portion of the time, but have to lay off a portion of the time each month on account of my disease. I also bought about the same quantity of liquor during this time of another person for the same purpose."

Certificates having been put in evidence from which it appeared that Charles Conaty had purchased liquor frequently, sometimes rum and sometimes whiskey, from half a pint to a pint at a time, and that these purchases were made on an average of more than ten times a month from June 1 to November 1, he was called as a witness and testified substantially as follows: "My business is that of a barber. Shop on the same street with Gould's apothecary store. I am acquainted with the defendant. Have lived in North Attleborough a number of years. The liquor I bought was for medicinal purposes, some for myself and some to give to others. My disease is dyspepsia, and the purpose for which I bought the liquor and used it was for the dyspepsia. I have had stomach trouble for eleven years. Have not consulted a physician in regard to it, but believe the liquor is good for the dyspepsia. Have worked at my trade steadily, and did not lose any time from May 1 to November 1. Also bought liquor in about the same quantities at another store during the same time. This was also for the same purpose."

Certificates having been put in evidence showing that Stephen McLaughlin during the months of June, July, and August had purchased liquor of the defendant fifty-four times, one purchase being of gin, seven of whiskey, one of six bottles of ale, and all the rest of rum in small quantities not exceeding a pint, he was called as a witness and testified substantially as follows: "My business is keeper of a saloon and pool table. The liquor I purchased at Gould's was for medicinal purposes. I took it for a disease that I had which the doctor called malaria, I believe.

Consulted a physician either the 30th of April or 1st of May, and was advised to take whiskey for the malaria. Bought rum mostly instead of whiskey because I thought it would make no difference. Up to April 30 there had been licensed places for the sale of liquor in North Attleborough. Since then there have been none excepting the apothecary stores. Have also purchased liquor during the same time of another apothecary store for the same purpose."

The district attorney was allowed, without objection, to cross-examine each of the above witnesses, and put leading questions to them, and in his argument to the jury he commented both upon their physical appearance and upon their appearance as witnesses, and the manner in which they answered the questions put to them.

So much of the foregoing testimony from each witness as related to purchases by him of liquor from any other place during the time covered by this complaint was admitted, against the objection of the defendant. It did not appear, and was not contended by the district attorney, that the defendant had any knowledge of these other purchases in any of the cases.

It was contended by the district attorney, in the argument to the jury, that the uses stated by the witnesses in the said certificates, and also in their testimony, were a mere pretence, and that the liquors were in fact purchased to be used as a beverage.

The government called Henry Bishop as a witness. He testified that he was sixteen, and would be seventeen next February. It appeared by the defendant's books, and he testified, that on September 9 and 10 he purchased half a pint of whiskey, and on September 30 half a pint of rum, upon a certificate signed by him that the liquors were wanted for medicinal purposes. These purchases were from the defendant personally. Upon cross-examination he stated that he was a Frenchman; that his true name was Henri Leveque, and he was allowed to state, against the defendant's objection, that he was commonly known by the name of Henry Bishop. No other evidence was offered that he was commonly known by the name of Henry Bishop. He also testified that the defendant asked him how old he was when he procured the liquors, and that he told him he was twenty-one.

He also testified that his mother sent him for it, and was asked by the defendant's counsel whether his mother was sick, whether she sent the money to pay for it, whether he so informed Mr. Gould, or whether he said anything to him about the matter. To all of these questions the district attorney objected, and they were excluded.

The defendant requested the judge to instruct the jury as follows : .

" 1. If the defendant has not sold any intoxicating liquor of any kind to any person, except upon the certificate of such purchaser, stating that the same was to be used for medicinal, mechanical, or chemical purposes, or upon the prescription of a physician, as provided in St. 1887, c. 431, he cannot be convicted upon the first count in the indictment. 2. The defendant cannot be convicted on either count in the indictment for making a sale of any kind of intoxicating liquors to any adult person, if such sale was made upon the certificate of the purchaser stating that it was wanted for medicinal, mechanical, or chemical purposes, or upon the prescription of a physician, as provided in St. 1887, c. 431. 3. The defendant cannot be convicted upon either count in the indictment for making a sale of any kind of intoxicating liquor to any adult person, if such sale was made in good faith, upon the certificate of the purchaser stating that such liquor was wanted for medicinal, mechanical, or chemical purposes, or upon the prescription of a physician, as provided in St. 1887, c. 431. 4. If the person called Henry Bishop in the indictment had the appearance of being of full age, and if the sales were made to him in good faith, after due caution and in the honest belief that he was an adult, the defendant cannot be convicted on the counts for sales to him, if the sales were made in the manner provided in St. 1887, c. 431. 5. If the defendant inquired of the so called Henry Bishop as to his age, and was informed by him that he was twenty-one, and the sales were made to him in the manner provided in St. 1887, c. 431, after due caution and in the honest belief that he was an adult, the defendant cannot be convicted on the counts for sales to him. 6. The defendant cannot be convicted for a sale of any kind of intoxicating liquor to the so called Henry Bishop for medicinal, mechanical, or chemical

purposes, whether said Bishop was a minor or not, upon his certificate made as provided in St. 1887, c. 431, on the counts in the indictment for sales to him.    7. The defendant cannot be convicted upon the first count in the indictment for a sale of any kind of intoxicating liquor to any minor for medicinal, mechanical, or chemical purposes, made upon his certificate, or the prescription of a physician, as provided in St. 1887, c. 431.    8. If the true name of the person called Henry Bishop in the indictment, and to whom the sales were made, was Henri Leveque, and not Henry Bishop, it is a fatal variance, and the defendant cannot be convicted on those counts for a sale to him. 9. If the sale of intoxicating liquors to adults was made by the defendant upon certificates or prescriptions as provided in St. 1887, c. 431, in the honest belief that the same were wanted for medicinal, mechanical, or chemical purposes, it is immaterial whether the same were actually used or wanted for any such purpose or not, and the defendant cannot be convicted on the first count in the indictment.    10. If the defendant made the sales to the so called Henry Bishop, as alleged in the indictment, upon his certificate as provided in St. 1887, c. 431, in the honest belief that he was an adult, he cannot be convicted upon the first count in the indictment.    11. The whole evidence in the case is not sufficient to warrant the jury in convicting the defendant upon any count in the indictment."

Full instructions were given as to what was necessary for the government to prove to constitute the offence set out in the first count of the indictment.    With reference to the evidence of illegal sales of intoxicating liquor, the judge instructed the jury that sales knowingly made by the plaintiff in violation of law were evidence of an illegal keeping of liquor with intent to sell in violation of law; that if the defendant kept liquor not intending to sell the same illegally, and in making sales believed that the sales made to adults were for the purposes specified in their certificates, or in case of sales made to minors believed that the persons to whom the sales were made were adults, such sales would not be evidence of any intent to sell in violation of law, even though the liquor purchased by the adults was not wanted for the purpose specified in the certificates signed by them, and although the persons who purchased were in fact

minors, and that such sales were not evidence showing any keeping of intoxicating liquor with intent to sell the same in violation of law. Full instructions were given upon all parts of the case not excepted to.

The judge instructed the jury that, if the defendant sold intoxicating liquor to persons, knowing, or having reasonable cause to know, that such liquor was not purchased for either medicinal, mechanical, or chemical purposes, such sales would be illegal, notwithstanding the purchasers signed a certificate that such liquor was purchased for medicinal, mechanical, or chemical purposes.

The judge instructed the jury as requested in the third and ninth of the defendant's prayers for instructions, but refused to give the other instructions prayed for. The jury returned a verdict of guilty on each of the three counts on which the defendant was tried; and the defendant alleged exceptions.

The case was argued at the bar in October, 1892, and afterwards was submitted on the briefs to all the judges.

*H. J. Fuller,* for the defendant.

*C. N. Harris,* Second Assistant Attorney General, for the Commonwealth.

BARKER, J.   1. Evidence that the person named in the indictment as Henry Bishop was commonly known by that name was competent upon the question of variance, which was one of fact for the jury. *Commonwealth* v. *Gormley,* 133 Mass. 580, and cases cited. *Commonwealth* v. *Caponi,* 155 Mass. 534.

2. As the sale of intoxicating liquors to a minor is illegal, whether made to him as a principal or as an agent, evidence that the purchase was for his mother who was sick, was immaterial, and was rightly excluded. *Commonwealth* v. *O'Leary,* 143 Mass. 95. *O'Connell* v. *O'Leary,* 145 Mass. 311, 313. *Commonwealth* v. *Joslin, ante,* 482.

3. Instructions that the defendant could not be convicted of illegal sales to Bishop if he had the appearance of being of full age, and if the sales to him were made in good faith, in the honest belief that he was an adult, were rightly refused. Knowledge that the purchaser was a minor was not essential to the offence. The defendant was bound at his own peril to keep within the condition of his license, that no sale or delivery

should be made to a minor, "either for his own use, the use of his parent, or of any other person." Pub. Sts. c. 100, § 9, cl. 4. *Commonwealth* v. *Hallett,* 103 Mass. 452. *Commonwealth* v. *Barnes,* 138 Mass. 511. *Commonwealth* v. *Julius,* 143 Mass. 132. *Commonwealth* v. *Savery,* 145 Mass. 212. *Commonwealth* v. *Daly,* 148 Mass. 428.

4. It is the intention of the statutes that sales of intoxicating liquors shall be made by retail druggists and apothecaries only for medicinal, mechanical, or chemical purposes. Pub. Sts. c. 100, §§ 1, 2, 9, 10, 18. St. 1887, c. 431. *Commonwealth* v. *Joslin, ante,* 482. Sales of liquors to be used as a beverage made by them with the knowledge or belief that the liquors are to be so used are illegal, and the rulings that the certificate or prescription in every case legalized the sale were rightly refused.

5. As such illegal sales, if made in good faith, without knowledge or belief that the liquors were in fact intended to be used as a beverage, are consistent with the absence of any intention on the part of the seller to violate the law ; and as in the opinion of the majority of the court there is no crime if the liquors are in fact bought for an authorized purpose, although the seller believes that they are to be used as a beverage, the government to sustain the charge made in the first count must, in the opinion of the majority of the court, prove both that the sales were illegal and made with guilty knowledge or belief. The evidence admitted under the defendant's objection was competent for one or both of these purposes. See *Commonwealth* v. *Joslin.*

6. The testimony of such of the purchasers as were asked by the government for what purpose their purchases were made was in the opinion of a majority of the court competent. If they had made false and fraudulent certificates, the government was not responsible for them, and could show their falsity. The witnesses themselves did not decline to answer the questions, and could do so only on the ground that their answers might tend to criminate themselves. The objection on that ground could not avail the defendant, and was not in fact taken by him at the trial.

7. The instruction "that if the defendant sold intoxicating liquor to persons knowing, or having reasonable cause to know, that such liquor was not purchased for either medicinal, mechan-

ical, or chemical purposes, such sales would be illegal," is erroneous, and was so held in *Commonwealth* v. *Joslin*, for the reason that reasonable cause to know is not equivalent to belief or knowledge. In the present case the instruction is to be read in connection with the third and ninth prayers, which were given as requested, and with the other instructions given. These were to the effect that, while sales knowingly made in violation of law were evidence of an illegal keeping, if the defendant kept liquor not intending to sell it illegally and in making sales believed them legal such sales would not be evidence of an intent to sell in violation of law, nor of a keeping with intent to sell in violation of law. But, upon the whole, we are of opinion that the erroneous ruling may have misled the jury upon the count for illegal keeping, and that the verdict upon that count ought for this reason only to be set aside.

We find no error affecting the verdicts of guilty upon the sixth and seventh counts for sales to Henry Bishop, and the verdicts upon these counts are to stand.

> *Verdict of guilty upon the first count set aside.*
> *Verdicts on the sixth and seventh counts to stand.*