## MORGAN v. HALBERSTADT.

(Circuit Court of Appeals, Second Circuit. March 13, 1894.)

No. 62.

1. LIBEL AND SLANDER—QUESTION FOR COURT.
    Where the purport of the publication complained of is plain and unambiguous, the question, in a civil action, whether it is a libel or not, is for the court.

2. SAME—QUESTION FOR JURY.
    The alleged libel charged that defendant, as agent of an insurance company, was short in his accounts, and that he had "boasted of the manner in which he had helped himself to the company's money." It further charged that the agents of the company "had been given unlimited opportunities to swindle the policy holders," and stated that its readers were familiar "with the methods and extent to which the agents named have availed themselves of their opportunities." Held, that there was no such ambiguity therein as to make a question for the jury.

3. ACTIONS—PARTIES—UNINCORPORATED ASSOCIATION.
    Code Civ. Proc. N. Y. § 1919, provides that any action that may be maintained against an unincorporated association may be brought against its president; and section 1921 provides that a judgment in an action so brought shall be satisfied out of the property of the association, and shall not authorize the issue of execution against the president. Held that, when the action has been brought against the president, an amendment to the complaint, substituting the association itself as defendant, does not introduce a new party to the action.

4. WITNESS—CRIMINATION—PRIVILEGE—WAIVER.
    In an action against an unincorporated association the defendant cannot object to incriminating testimony given by one of the associates, where the witness himself fails to assert his privilege.

In Error to the Circuit Court of the United States for the Southern District of New York.

This was an action by Sigismundo E. Halberstadt against Henry A. Morgan, as president of the New York Times, for libel. There was a verdict for plaintiff for $15,000 damages, and judgment thereon, and defendant brings error.

Benjamin F. Einstein, for plaintiff in error.

Robert H. Griffin, for defendant in error.

Before WALLACE and LACOMBE, Circuit Judges.

LACOMBE, Circuit Judge. The complainant sets out four causes of action, based on separate articles, which appeared in the defendant's newspaper on September 5, September 30, October 10, and November 1, 1891, respectively.

The first of these is as follows:

"This is the situation in the Beers' Mutual Admiration Society at Broadway and Leonard street. Everything is done to avoid publicity and to screen the truth. Not one of the twenty men composing the board of trustees, save those two or three who hold executive offices, knew of the Merzbacher defalcation until the Times exposed it. Not one of these men—these alleged guardians of trust funds—knows that Halberstadt, Beers' Mexican agent, is short in his accounts $28,000; and yet this same Halberstadt, while standing in the barroom of the Hoffman House, early last March, surrounded by such men as Merzbacher and Dinkelspiel, boasted of the manner in which he was helping himself to the company's funds."

The second is as follows:

"The policy of the New York Life with reference to its defaulting agents in Spanish America furnishes another explanation of the distrust with which the company has long been regarded by the policy holders in Rio. The career of John Davis, for instance, is familiar to everybody in the tropics who takes an interest in insurance matters. Davis, it will be remembered, handled a business of $9,000,000 a year in Mexico. He led a fast life, and when he disappeared one day his accounts were found to be short $30,000. No attempt was made to arrest him. The career of the two agents who immediately preceded Davis is equally notorious in the tropics. These agents, or one of them at least, owed his appointment to the defaulter Merzbacher. Their shortage was found to be $60,000. Neither of them was arrested. The case of the intemperate German agent, who was found to be short in his accounts $12,000, in Chile, and who was subsequently transferred to Mexico, is another familiar story. This agent was not only not punished, but he was transferred to another agency. Then came the defaulter Merzbacher, with a shortage of $700,000 standing opposite his name. The news of his defalcation was received in Brazil with astonishment."

The third is as follows:

"The notoriously bad character of the agents whom Mr. Beers employs to do the work of the New York Life Insurance Company is a theme that constantly presents new features and new attractions. Dinkelspiel, Merzbacher, Webber, Stoddart, Moore, Halberstadt, Davis, and Vanuxem are names that stand at the head of the list of Mr. Beers' warm personal friends and admirers, and to each of these men he had given valuable appointments, with unlimited opportunities to swindle and deceive the policy holders. The readers of the Times are entirely familiar with the methods and the extent to which the agents named have availed themselves of those opportunities."

The fourth is as follows:

"Since the present feeling of distrust of the company's management arose efforts have been made to enlighten a deceived lot of policy holders concerning the abuses of various sorts committed by Messrs. Beers, Merzbacher, Dinkelspiel, Sanchez, and others, but, notwithstanding all that has been said, it is evident to those who, like myself, are acquainted with the management of the Spanish-American department, that there are details of an important nature lacking. It is a fact that the most immoral methods of doing business prevail in that department, and that the arch conspirator who, next to Beers, is responsible for these immoralities, is Sanchez himself. * * * He and his subagents have made use of all sorts of exaggerations and deceits in Spanish America, where the insurance public is completely ignorant of life insurance, and where the most improbable stories as to conditions of policies, and the results that will accrue from them, may be told with perfect safety. * * * S. E. Halberstadt is another one of the com-

, pany's agents to whom attention must be drawn if the company's affairs in Spanish America are to be thoroughly exposed. This man is said to have been a defaulter while in the employ of the New York Life in Peru and Chile. He has been for some years the company's representative in Mexico, where his accounts have steadily run in arrears, as he himself boasted one night at the Hoffman House, in this city. The entire staff of the Spanish-American department have been witnesses to the scandalous quarrels that took place between Merzbacher and Halberstadt in the former's private office in this city. One of the most remarkable things about this man's career is the freedom with which he talks about the officers of the company, notably President Beers, and his son-in-law, Berthelot. Halberstadt was a candidate for Merzbacher's position, but he has not obtained it yet. Another agent who has stolen the company's money in Spanish America was until very recently manager at Buenos Ayres."

There was evidence showing that the plaintiff was the person referred to by name, and, in the second article, as "the intemperate German agent."

1. Plaintiff in error assigns error in the instructions to the jury, in that the circuit judge charged as follows:

"The articles in the New York Times are charged in the complaint to be each and every one libelous. The explanation (or, as it is called in legal phrase, the innuendo) which is given in the complaint of the meaning of the article represents that the articles were libelous. In my opinion, gentlemen, each article was in fact libelous."

—To which charge defendant duly excepted.

The very authorities cited by the plaintiff in error abundantly sustain this part of the charge. They hold that the language used must be given its ordinary meaning; that the test is whether, in the mind of an intelligent man, the language naturally imports a criminal or disgraceful charge; that the language is to be understood by the court in the sense in which the world generally would understand it, giving to the words their ordinary meaning; that the language is to be understood in the ordinary and most natural sense; and that, when the writing complained of is plain and unambiguous, the question in a civil action, whether it is a libel or not, is a question of law. Hayes v. Ball, 72 N. Y. 420; More v. Bennett, 48 N. Y. 472; Williams v. Godkin, 5 Daly, 499; Weed v. Foster, 11 Barb. 203; Snyder v. Andrews, 6 Barb. 43,—to which list of authorities may be added Rue v. Mitchell, 2 Dall. 58, holding that "the sense in which words are received by the world is the sense which courts of justice ought to ascribe to them" on the trial of actions such as this. Plaintiff in error apparently concedes upon his brief that the court correctly construed the language of the second and fourth articles, but contends that the first and third were ambiguous, and should have been left to the jury. The contention is frivolous. No intelligent man reading these articles could fail to understand that the author of the first one charged an agent through whose hands moneys of a corporation passed, not only with being short in his accounts $28,000, but also with openly boasting of the manner in which he was helping himself to the company's funds. Nor could the intelligent reader fail to understand that the third article charged that Halberstadt had been given unlimited opportunities to swindle and deceive the

policy holders, and had availed himself of such opportunities. If these excerpts do not charge the crime of embezzlement, they do certainly charge disgraceful conduct, exposing the party assailed to odium and contempt. And there is no ambiguity about the language used.

Defendant's counsel asked the court to charge that the words in the first article, "Halberstadt, Beers' Mexican agent, is short in his accounts," do not necessarily impute dishonesty. The court charged that "these simple words do not necessarily and of themselves, without anything else in the case, impute dishonesty;" but added that "the entire article, as set forth in that clause of the complaint, is libelous." This was all defendant was entitled to, for the article must be considered as a whole; and if, as a whole, it is libelous, the circumstance that it contains some innocuous statements will not relieve defendant from responsibility for its publication. The exceptions to this part of the charge are therefore unsound.

2. The plaintiff in error further contends that the circuit judge erred in refusing to charge, as requested by defendant's counsel, that the "words of the article of September 30th [second article], 'who was found to be short in his accounts $12,000 in Chile,' are justified by the evidence." This request was made after the court had charged the jury. They had already been instructed that, in accordance with the accounts between the company and the plaintiff, the plaintiff appeared to owe the company various sums of money, which the court enumerated, aggregating over $22,000. Their attention was also called to the explanation of this indebtedness proffered by the plaintiff, viz. that these several amounts were for traveling expenses, and excessive expenses in the business of the company in entering upon new fields of labor, and were to be repaid to the company out of plaintiff's commissions as they might mature; and it was left to them to find whether, in view of the explanation, the plaintiff was, as between himself and the company, short in his accounts, implying embezzlement by failure to account and remit. Having already told the jury that the face of the accounts showed the plaintiff to be indebted to the company as stated, the court was under no obligation to repeat that statement in the precise words of defendant's request.

3. Plaintiff in error further contends that the circuit court erred in allowing plaintiff to amend his complaint. Upon the trial, motion was made to amend the fifth paragraph of the complaint so as to read: "That on the 5th day of September, 1891, the defendant, *the said joint-stock association known as and for the New York Times, of which the said Henry A. Morgan is president,* maliciously published in the said New York Times," etc. (the words inserted by this amendment are those in italics)—and to similarly amend the several averments of the complaint under each cause of action. Defendant objected to the amendments "as, in effect, introducing a new party to the action," and reserved an exception. The summons and complaint were entitled "Sigismundo E. Halberstadt vs. Henry A. Morgan, President of the New York Times," and the complaint

averred that "the New York Times was, and still is, an unincorporated joint-stock association, consisting of seven or more associates, having its principal place of business in the city of New York," and that "the defendant, Henry A. Morgan, was, and now is, the president of said association; the said association being engaged * * * in the business of publishing, circulating, and vending a daily newspaper known as and called 'The New York Times,' the said association being * * * a citizen and resident of the state of New York." It is provided by section 1919 of the New York Code of Civil Procedure that—

"An action * * * may be maintained against the president or treasurer of such an association * * * for any cause of action, for or upon which the plaintiff may maintain such an action * * * against all the associates."

And section 1921 of the same Code provides that—

"In such an action * * * a judgment against the officer against whom it is brought does not authorize an execution to be issued against his property or his person; nor does the docketing thereof bind his real property or chattels real. Where such a judgment is for a sum of money, an execution issued thereupon must require the sheriff to satisfy the same out of any personal property belonging to the association."

The amendment, therefore, is not obnoxious to the objection taken by defendant. It did not introduce any new party, since, under the operation of these sections, Morgan was only the nominal defendant, the real defendant being the association. Bank v. Van Derwerker, 74 N. Y. 234.

4. Upon the trial the plaintiff called as a witness Gilbert E. Jones, who testified that he was, and during the period covered by the complaint had been, a shareholder in the New York Times Association, and also its treasurer. Against the objection of defendant's counsel, he further testified that such association at the times referred to was engaged in publishing a newspaper known as the "New York Times;" that its place of business was in New York city, at Park Row and Spruce street, in the building known as "The Times Building;" that its newspaper had been published for several years; that its circulation was large; and that during the time he knew it its publication had not been discontinued. The grounds of the objection, as stated on the record, are that "the witness is privileged from answering, the object of the questions put to him being to try to prove the publication of a libel; and the witness, being a shareholder in the New York Times Association, is privileged from answering." Defendant's counsel also asked the court to instruct the witness that, if his answer to the questions would tend to criminate him, he had the right to refuse to answer. The court held that his answers would not tend to criminate him, and directed him to answer. The record does not show that the witness himself asserted any privilege, and he did answer. Exceptions were duly reserved, and the rulings of the circuit court are assigned as error. It is a sufficient answer to the contention of plaintiff in error to refer to the well-settled principle that such privilege belongs exclusively to the witness. The party to the suit has no right to insist upon it, except when he is himself the witness. And if

the witness waives his privilege, or the court disregards it, and requires him to answer, the party has no right to interfere or complain of the error. Cloyes v. Thayer, 3 Hill, 564; Southard v. Rexford, 6 Cow. 255; Ward v. People, 6 Hill, 144; People v. Carroll, 3 Parker, Cr. R. 73.

5. The testimony of Jones remaining in the case, the exception to the admission of copies of the New York Times newspaper is manifestly unsound. Judgment affirmed.