[Civ. No. 1623. First Appellate District.—August 16, 1915.]

## C. K. BONESTELL, Appellant, v. A. B. SHAW et al., Respondents.

LIBEL—DEFINITION OF—SECTION 45 CIVIL CODE.—Libel is defined by section 45 of the Civil Code to be "a false and unprivileged publication by writing, printing, . . . which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation."

ID.—DUTY OF ATTORNEYS—CHARGE OF BREACH OF—LIBEL.—Section 282 of the Code of Civil Procedure provides that it is the duty of an attorney at law, among other things, to employ in the maintenance of causes confided to him such means only as are consistent with truth, and never to seek to mislead the judge or any judicial officer by any artifice or false statement of law; and a breach of the duty of an attorney as thus defined would constitute unprofessional conduct, and a false and unprivileged publication charging such conduct would be actionable *per se.*

ID.—PLEADING—SUFFICIENCY OF COMPLAINT.—In an action by an attorney for libel based upon an article published in a newspaper, where the article is certainly not susceptible of but one conclusion, and that a harmless one, and by averment and innuendo, the complaint alleges that the language was understood by readers of the newspaper as carrying the alleged defamatory meaning, a demurrer to the complaint should have been overruled.

ID.—PLEADING—PUBLICATION BY DEFENDANTS.—In such a case where the complaint alleged that the defendants were the owners of the paper and that on the day specified they published therein concerning the plaintiff the article set forth in the complaint, this was a sufficient averment of the publication by the defendants.

APPEAL from a judgment of the Superior Court of Fresno County. H. Z. Austin, Judge.

The facts are stated in the opinion of the court.

W. D. Crichton, for Appellant.

Lamberson, Burke & Lamberson, for Respondents.

KERRIGAN, J.—This is an action to recover damages for the publication of an alleged libel. To the plaintiff's second amended complaint the defendants interposed a general and

special demurrer, which the court sustained, whereupon, the plaintiff declining to further amend his complaint, judgment was entered in favor of the defendants.   The appeal is from that judgment.

The article forming the foundation of this action appeared in the *Coalinga Oil Record,* a newspaper published by the defendants in Fresno County, where both the plaintiff and the defendants reside and are engaged in business.   Prior to the publication plaintiff had acted as attorney for the members of the city council of Coalinga in a recall proceeding instituted against them, in connection with which a petition for a writ of *mandamus* had been filed in the office of the clerk of the district court of appeal, praying for a peremptory writ directing the said trustees to call an election.   Answer to the petition had been made, and the district court had appointed one Pierce Evans, city recorder of the city of Coalinga, to hear evidence upon certain issues presented by the petition and answer, and to report findings of fact to the court.   Such findings were made and reported, whereupon the trustees removed Pierce Evans from his office of city recorder.

Omitting some of the verbiage, the article complained of reads as follows:

"Evans declares that he knows of no reason for the board's action in his case, but he admits that his refusal to corrupt himself and prostitute an office of referee of the appellate court in the hearing of the recall case herein might have been the underlying motive for the removal of his official head. . . .

"Evans received a set of 'findings in the case' after the matter came to a hearing, from attorney C. K. Bonestell for the defense (the city trustees), with a letter explaining that he wished these findings to be used 'in case the testimony bore them out.'   The wind-up of such an uncalled for procedure upon the part of an attorney was the indefinite statement 'you know what I mean.'   From this it might be construed that Bonestell took it for granted that Evans, an appointee of the city trustees, would make his findings in a case before the appellate court upon the lines laid down by him before submitting it . . . But Judge Evans, even though an appointee of the city trustees, and holding an office of profit to himself by virtue of such appointment, made his findings according to the testimony in the case. . . . Evans overlooked everything but the facts as substantiated by the testimony at the

hearing. He refused to prostitute his office as referee for the appellate court by finding anything that was not borne out by the testimony. The only reason that he can see now for his dismissal from the office of city recorder, without a reason or a hearing, was because he refused to be guided in the recall hearing by counsel for defendants. In other words, he placed himself beyond any position where he might be accused of allowing counsel for one side of a legal controversy to write his decision for him.

"Judge Evans declares that if his dismissal is the result of his refusing to be guided by the findings of Bonestell, he considers it the highest honor that could be paid him. And we concur heartily in his consideration. We glory in the fact that he was above prostituting his office for the purpose of benefiting those who to a certain extent were his benefactors. We glory in his manhood in making his findings in the recall case according to the testimony, without considering the audacious behaviour of counsel for the defendants in the case, even though those defendants had the chance to cut him off from a profitable position. We are glad to know that Evans could not be swayed in his duty to the court and to the people, even when he must have been aware that his refusal to corrupt himself might lead to his political undoing."

We think the court committed error in sustaining the demurrer to plaintiff's second amended complaint. Libel is defined by section 45 of the Civil Code to be "a false and unprivileged publication by writing, printing . . . which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." Section 282 of the Code of Civil Procedure provides that it is the duty of an attorney at law, among other things, to employ in the maintenance of causes confided to him such means only as are consistent with truth, and never to seek to mislead the judge or any judicial officer by any artifice or false statement of law. A breach of the duty of an attorney at law as thus defined would constitute unprofessional conduct, and a false and unprivileged publication charging such conduct would, it appears, be actionable *per se*. In 18 Am. & Eng. Ency. of Law (2d ed.), p. 960, it is said: "Any oral or written words which impute to an attorney at law a want of requisite qualifications to practice law, or charge him with having been guilty of cor-

rupt, dishonest or improper practice in the performance of his duties as a lawyer, are actionable *per se.*" See, also, *Sharpe* v. *Larson,* 67 Minn. 428, [70 N. W. 1, 554].

We think it clear that the language in the published article upon its face accuses the plaintiff of unprofessional conduct, the natural effect of which was to expose him to obloquy and to injure him in his profession. Taking the words of the article which refer to the plaintiff according to their plain and natural meaning, and as they would be understood by any ordinarily intelligent person, it is clear that it cannot be held that they do not import anything of a defamatory character concerning the plaintiff (*Tonini* v. *Cevasco,* 114 Cal. 267, 271, [46 Pac. 103] ; *Schomberg* v. *Walker,* 132 Cal. 224, [64 Pac. 290] ; *Chiatovich* v. *Hanchett,* 88 Fed. 873 ; *Collins* v. *Dispatch Publishing Co.,* 152 Pa. St. 187, [34 Am. St. Rep. 636, 25 Atl. 546].) Certain it is that the language of the article cannot be held to be susceptible of but one conclusion, and that a harmless one. If it be capable of two constructions, it naturally follows that the plaintiff, by averment and innuendo having alleged in his complaint that the language was understood by readers of the newspaper as carrying the alleged defamatory meaning, the demurrer to the second amended complaint should have been overruled.

In *Morgan* v. *Halberstadt,* 60 Fed. 592, 594, [9 C. C. A. 147], the court said: "If the words published are fairly capable of two meanings, one harmless and the other defamatory, it is a question for the jury to determine from the evidence in what sense the person who may have read the same may have understood them."

The complaint alleges that the defendants are the owners of the *Coalinga Oil Record,* and that on the day specified they published therein concerning the plaintiff the article set forth in the complaint. This was a sufficient averment of publication by the defendants. (Code Civ. Proc., sec. 460; 25 Cyc. 446, and cases cited in note.)

The judgment is reversed.

Lennon, P. J., and Richards, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 11, 1915.