STATE *vs.* GEORGE W. NORTON.

Cumberland.    Opinion June 8, 1896.

*Libel. Pleading. Demurrer. Const. Art. 1, § 4; R. S., c. 129, §§ 1, 5.*

Whether language published is libellous is regularly a question for the jury.

When a respondent demurs to an indictment for libel, he thereby refers the question of libel or no libel to the court.

Words not actionable, if merely spoken, may be indictable as libellous, if published.

Words in an interrogative form may be as libellous as if in a declarative form.

In determining whether published language is libellous, its natural ordinary meaning is to be regarded, rather than its possible different meaning.

*Held;* that the language published by this respondent though in the interrogative form is clearly defamatory in meaning and effect and is therefore libellous.

When a respondent refers his case to the court by a demurrer, and the opinion of the court is against him, judgment and sentence regularly follow.

EXCEPTIONS BY DEFENDANT.

This was an indictment for libel found in the Superior Court, for Cumberland County, and to which the defendant filed a demurrer. The presiding justice overruled the demurrer and the defendant excepted.

The material allegations in the first count of the indictment are as follows:—"Against what man is Deputy Sheriff Charles A. Plummer (meaning the said Charles A. Plummer) now plotting by the employment of a needy man who shall act as 'spotter' that some one who has incurred the liquor deputy's displeasure (meaning the said Charles A. Plummer) may be punished? (meaning that the said Charles A. Plummer was engaged in a scheme to obtain some needy man to act as a 'spotter' to obtain evidence against some person who had incurred the displeasure of the said Charles A. Plummer.)   Who will be the next young man to lay himself liable to State prison for a term of years by taking a false oath by direction of this guardian of our laws?" (meaning that the said Charles A. Plummer had procured and caused one young man to lay himself liable to State prison for a term of years by committing the criminal offense of perjury by direction of the said Charles A. Plummer, and that the said Charles A. Plummer had thereby been guilty of the criminal offense of subornation of perjury); to the great damage, scandal and disgrace of the said Charles A. Plummer, to the evil example of all others in like cases offending, against the peace of said State and contrary to the form of the statute in such case made and provided."

*C. A. True*, County Attorney, for State.

*A. W. Coombs*, for defendant.

There is no averment that Plummer had employed any man as a spotter in the past, and that the words were published of and concerning such employment.   Nor is there averment that Plummer had sought to punish any man who had incurred his displeasure, and that the words were published of and concerning such action.   The want of necessary averments in this respect cannot be supplied by inference.

At most, these words of interrogation can only be held to imply that Plummer had been plotting by the use of a spotter to obtain evidence to secure conviction of some criminal offender.   It is not intimated that Plummer was plotting against any innocent man. All guilty men should be "plotted" against by all legitimate

means, and the employment of detectives is a common, and sometimes, the only method available for the detection of the criminal.

The publication in question is a harmless interrogation which is not of itself libellous ; the indictment contains no proper averments to render it so ; the innuendo is not supported by what precedes ; and so much of the indictment is therefore bad.

All false swearing is not perjury ; in order to constitute that offense, the false swearing must be committed under oath, before a court of competent jurisdiction, in a pending trial and the false swearing must be as to matter material to the issue. False swearing not confined within these limits is not a crime.

There is no allegation in the publication, that any "young man" had taken a false oath even. The interrogation, at most, merely implies it, by the use of the words "next young man;" but implication and inference are not proper substitutes for necessary averment in prosecutions for criminal libel. The words used do not expressly charge a crime upon any young man.

A natural and entirely reasonable construction of the entire article would be that it sets out the danger to the community from spotter evidence and to a "young," inexperienced, "green" spotter himself, though misunderstanding the nature of the work committed to him by the general direction given him by one who was really acting as a "guardian of our laws."

The liberty of the press permits of fair criticism of the acts of all public officers. That is what the publication in question was and the respondent is guilty of no criminal offense unless he has exceeded the limits of fair criticism.

SITTING : PETERS, C. J., WALTON, EMERY, FOSTER, WISWELL, STROUT, JJ.

EMERY, J. The indictment charges that the respondent maliciously published by printing in a daily newspaper, in Portland, the following language concerning Charles A. Plummer then a deputy sheriff, specially charged with the enforcement of the

liquor law in Portland, to wit:—"Against what man is Deputy Sheriff Charles A. Plummer now plotting by the employment of a needy man who shall act as spotter, that some one who has incurred the liquor deputy's displeasure may be punished? Who will be the next young man to lay himself liable to State prison for a term of years by taking a false oath by direction of this guardian of our laws?"

The respondent, admitting all the allegations by his demurrer, contends in his · argument that this language so published does not constitute a criminal libel.

This question was wholly one for the jury, since under our constitution and statute, in all indictments for libels, the jury determines the law as well as the facts. Const. Art. 1, § 4; R. S., c. 129, § 5. But since this provision is for the benefit of the accused, he may waive it by admitting the allegations of fact, and asking the court to determine the law. *State* v. *Gould*, 62 Maine, 507. Hence the case is properly before us.

The respondent urges that the language published does not accuse Mr. Plummer of any criminal offense. Such a charge is not essential to a ˙criminal libel. There is a wide difference in this respect between words spoken, and words printed in a newspaper. Many words which merely spoken are not actionable become punishable as libellous when embedded in type and circulated in a newspaper. *Tillson* v. *Robbins*, 68 Maine, 295. This point in argument, therefore, must be overruled.

The various common law definitions of criminal libel need not be cited, since the statute, R. S., c. 129, § 1, sufficiently describes what written words, maliciously published, will constitute a punishable libel. They are any such words, "tending to provoke him [the victim] to wrath, expose him to public hatred, contempt or ridicule, or to deprive him of the benefits of public confidence and social intercourse." Reading now in the light of this statute the written or printed words published by the respondent, it must be evident that they tend directly to bring about one if not more of the results named in the statute. They are defamatory in that they tend to injure Mr. Plummer's reputation. His integrity as

an individual and as a public officer is distinctly assailed. If he were guilty of such conduct as the words clearly imply, he would deserve public hatred, contempt and ridicule; and would forfeit the benefits of public confidence and social intercourse. If innocent, such words would be provocative of wrath, and would endanger his standing with the public until at least their falsity was made equally well known. In either event, his reputation as a public officer would for a time at least be seriously injured.

The respondent further urges that he asserted nothing against Mr. Plummer but only asked some questions. It is immaterial whether he asserted, or only suggested, whether he used the declarative or interrogative form. *Adams* v. *Lawson*, 17 Gratt. 250 (94 Am. Dec. 455). Insinuations may be as defamatory as direct assertion, and sometimes even more mischievous. The effect, the tendency of the language used, not its form, is the criterion. The libeller cannot defame and escape the consequences by any dexterity in style.

The respondent urges still again that the language may, perhaps, be so construed and explained as not to be defamatory, and that if this can possibly be done such construction is to be taken as the true one—the one intended by the writer. He endeavors with much ingenuity to show how this can be done in this case. Here, however, the want of sufficient skill in style may subject the writer to a punishment he hoped to avoid. He should avoid defamatory style as well as defamatory matter. It is not the ingeniously possible construction, but the plainly normal construction which determines the question of libel, or no libel, in written words which are maliciously published. In this case the natural inference from the published language is clearly defamatory.

The indictment is for a misdemeanor only. The respondent has admitted all the facts alleged against him, and rested his defense upon the opinion of the court whether those facts constitute the offense charged. That opinion is that upon his own confession he is guilty of publishing a libel as charged. Both the law and the

fact being determined against him, nothing remains but judgment and sentence.

*Exceptions overruled.    Judgment for the State.*