W. S. Raker v. State of Nebraska.

Filed January 7, 1897. No. 8216.

1. **Review:** Briefs. A question discussed in the brief of counsel, but not raised by any assignment in the petition in error, will not be considered.

2. **Instructions:** Misstatement of Issues. A material misstatement of the issues in an instruction in a criminal case is error which ¬ill not be cured by a correct statement in another instruction.

3. **Libel:** Criminal Law. A false or malicious publication, in print or writing, which tends to injure the reputation of another person, or to bring him in contempt, hatred, or ridicule, is libelous, and the publisher is amenable to the criminal law.

4. ———: ———: Instructions: Burden of Proof. In a prosecution for criminal libel it is error to so instruct the jury as to cast upon the defendant the burden of establishing that the alleged publication was not libelous.

Error to the district court for Douglas county. Tried below before Scott, J. *Reversed.*

*James Hassett, E. C. Strode,* and *W. S. Summers,* for plaintiff in error.

*A. S. Churchill, Attorney General,* and *George A. Day, Deputy Attorney General, contra.*

Norval, J.

W. S. Raker was convicted in the district court of Douglas county of the publication of a criminal libel, and

sentenced to imprisonment in the penitentiary for the period of one year. He has brought the record to this court for review, alleging forty-four grounds for reversal of the judgment pronounced against him, all of which will not be noticed, for the reason that to do so would necessitate our writing a treatise on the law of criminal libel and criminal procedure as well, which task we neither have the time nor inclination to now undertake. This opinion will be confined to a consideration of but a few of the principal questions raised.

The defendant, on March 1, 1895, was the editor and publisher of the Gretna *Reporter*, a weekly newspaper, published in Sarpy county, this state, and in the issue of his paper of the above date appeared the following article of and concerning Job Babbitt, the complaining witness, who was foreman of the grand jury then in session in the city of Omaha: "Job Babbitt, the foreman of the federal grand jury, now in session at Omaha, and also a *dc facto* member of the Christian church, is untiring in his efforts to know the facts as well as to listen to the testimony as to the evils existing in the 'Gate City.' Accordingly, one night last week, he, together with a party of his colleagues, took advantage of the absence of his religious associates to visit one of the dives in the burnt district to while away an hour, and see Omaha by gaslight, listen to the entrancing music, but we hope not to cultivate the acquaintance of the sirens that danced attendance on them. At any rate the party were comfortably enjoying a cigar around a table from which the glasses had not yet been removed when our reporter entered. He was naturally somewhat surprised but reasoned that that was part of their business and let it go at that. The object of their business will doubtless be made known when the indictments are returned." The information charges that the defendant in Douglas county, "unlawfully, feloniously, and maliciously contriving and intending to injure, scandalize, and vilify the good name and reputation of one Job Babbitt, and to bring him into hatred and contempt, ridicule, and

disgrace, unlawfully, feloniously, and maliciously did publish a certain false, malicious, and defamatory libel of and concerning the said Job Babbitt in the Gretna *Reporter*, a weekly newspaper printed and published in the town of Gretna, Sarpy county, Nebraska, and having a general circulation, also then published and having a circulation in Douglas county, Nebraska, in a part of which said false, scandalous, malicious, and defamatory libel were and are contained the following false, malicious, scandalous, and libelous words and matters of and concerning the said Job Babbitt, to-wit: [Here follows that portion of the article above set forth, commencing with 'accordingly one night last week' and ending with 'danced attendance on them,' together with the innuendoes set out in the information.]" A demurrer to the information was overruled by the trial court, which decision is the first ground of complaint in the brief filed. This point cannot be considered, for the reason the ruling on the demurrer is not made the basis of any one of the assignments in the petition in error.

Objection is made to the first instruction by the court on its own motion, which undertook to state to the jury all the material averments contained in the information, but was not wholly successful in that regard. The jury were told, *inter alia*, the information charged that the alleged libelous article was published "in the Gretna *Reporter*, a weekly newspaper printed and published in the town of Gretna, Sarpy county, Nebraska, and having a general circulation in Douglas county." It is the quoted portion of the instruction which the defendant assails, and the criticism directed against it is well merited. The information contained no averment to the effect that the Gretna *Reporter* was a newspaper of general circulation in Douglas county, yet the jury were told by the first instruction that it did so allege, while the eighteenth paragraph of the charge advised the jury that the information stated that the paper "in which the alleged libel was published by the defendant was a newspaper having a

general circulation," not limiting it to any county, and that the publication of a false and malicious libel in a newspaper having a general circulation constitutes a felony punishable by imprisonment in the penitentiary; but if the paper did not have such a circulation, the publication of such an article therein would not be libel, but misdemeanor merely. The different parts of the charge were contradictory and conflicting upon the question of the character of the circulation of the paper, and tended to confuse and mislead the jury in their deliberations. If the Gretna *Reporter* merely had a general circulation in one county, as the court by the first instruction so directed the jury was the allegation of the information, then, under the decision in *Koen v. State*, 35 Neb., 676, no felony was charged against the accused, but at most a misdemeanor. The jurors may have believed that the defendant was being tried alone for the lesser offense, and hence misled, to return a verdict of guilty as set forth in the information, which charged the highest grade of criminal libel known in this state. The attorney general, in his brief filed, concedes that the instruction was bad, and that if the charge contained no other direction upon the question of the circulation of the Gretna *Reporter*, the conviction could not stand; but he insists that the charge of the court must be construed as a whole, and when thus considered, if it fully and fairly stated the issues, there is no error. Such is undoubtedly the doctrine recognized by this court, but this rule applied to this case will not cure the error in the first instruction. If it had merely failed to state some allegation contained in the information, this defect would have been rendered harmless if the omission was covered by some other portion of the charge of the court. The vice imputed to the first instruction is not that it merely omitted to state something, but that it misstated the averment of the information as to the circulation of the paper containing the alleged libelous article; and such error is not cured by the correct statement concerning the subject in another

paragraph of the charge. (*Ballard v. State*, 19 Neb., 609; *Galloway v. Hicks*, 26 Neb., 531.)

Complaint is made of the giving of the third instruction, which reads as follows:

"3. A libel is a false and malicious publication expressed either in print or in writing, or by pictures, effigies, or other signs, tending to injure the reputation of one alive and expose him to public hatred, contempt, or ridicule. It will be observed that in order to constitute the false and malicious publication, the print or writing need not in fact injure the reputation, nor in fact expose him to public hatred, contempt, or ridicule. It is sufficient if it tends to injure the reputation of the person, and tends to expose him to public hatred, contempt, or ridicule. Nor is the state required to prove, in order to prove a libel, that the false and malicious publication tends to injure the reputation of the person and expose him to public hatred, contempt, and ridicule. It is sufficient if the publication of the matter, either in print or writing, tends to injure the reputation of a person and expose him to public hatred or expose him to contempt or to expose him to public ridicule."

The criticism is directed against the portion of the instruction which says, "nor is the state required to prove, in order to prove a libel, that the false and malicious publication tends to injure the reputation of a person and expose him to public hatred, contempt, and ridicule." It is argued that by this language the burden was cast upon the defendant to prove that the portion of the article made the basis of the prosecution was not libelous. Conceding, without deciding the point, the language just quoted would be a correct statement of the law when applied to a false and malicious publication of an article which on its face discloses that it tends to injure the reputation of a particular person or to cause his social degradation, or to excite public distrust, contempt, or hatred for him, such rule was not appropriate in this case, since the part of the

article set out in the information does not import defamation on its face of a particular person.  It does not even mention the name of the complaining witness, and standing alone, and disconnected with the remainder of the article, required proper inducement, innuendoes, and evidence to make it apply to Job Babbitt, and also to show the words were employed in a libelous sense.  It was therefore for the state to prove that the publication tended to injure the complaining witness, or to expose him to public hatred or contempt, which fact, if it be a fact, was the province of the jury to determine from all the evidence in the case under proper instructions.  It was not for the defendant to show the article was not libelous, but the burden was upon the state to establish every element of the offense.

It is insisted that the court erred in the fifth paragraph of its charge, which was to the effect that the publication of a false and malicious libel of and concerning a person, either in print or in writing, which tends to injure the estimation in which one is held and to injure his good name and to cause him to be despised and to be treated with contempt, constitutes a criminal libel within the meaning of the law.  The point is made that the foregoing definition of libel is correct from the standpoint of civil liability, but that criminal prosecutions can only follow a public wrong, and that a publication must be of such a nature as tends to create a breach of the peace and to disturb the harmony of society, else it is not made the basis of criminal prosecution.  In Moore's Criminal Law, section 724, it is said: "An indictment lies for publishing words which contained that sort of imputation which is calculated to vilify a man and bring him into hatred, contempt, or ridicule, though the words impute no punishable crime."  In 2 Wharton's Criminal Law [10th ed.], section 1595, it is stated that "it is defamatory to publish that of another which will put him, supposing him to obey the impulses common to men under such circumstances, in a condition of mind which is likely to result in a breach

of the peace. And even supposing there be no danger of any such action on his part, it is defamatory to expose him to public hatred, contempt, or ridicule." The same author at section 1598 uses this language: "Whatever, if made the subject of a civil action, would be considered libelous, without laying special damage, is indictable in a criminal court, and by this test, therefore, the law of libel, as expressed in actions for damages, is brought to bear on criminal prosecutions." In *State v. Spear*, 13 R. I., 324, it was ruled that "a publication is libelous if, without charging an indictable offense, it falsely and maliciously imputes conduct tending to injure reputation, to cause social degradation, or to excite public distrust, or hatred." To the same effect are *Giles v. State*, 6 Ga., 276; *State v. Mayberry*, 33 Kan., 441; *State v. Jeandell*, 5 Harr. [Del.], 475; 13 Am. & Eng. Ency. of Law, 294, and the numerous cases cited in note 1. Applying the doctrines of the foregoing authorities to the question under consideration, the definition of libel as laid down by the court in the instruction under consideration is not faulty, but entirely sound.

The sixth instruction is criticised as being argumentative. After defining slander and libel it says: "The words of the slanderer may arouse anger, resentment, and revenge to-day; but they, like all human utterances, lose their potency, their vehemence, their power of producing anger, resentment, and revenge. Ere the end of the morrow they die, young and soon forgotten. Not so when those words are reduced to writing or print and published. They live on and on, and are read by the children and children's children to the last generation of the person libeled. They arise in all their hideous deformity to vex, sap, and destroy the happiness, the peace, the good names of the living and beloved memory of the dead while time lasts, because the ink that prints a published libel never fades, never dies." Argumentative instructions should not be given. Whether the language above quoted is faulty in that regard we shall not stop to decide,

but pass it with the observation that it, as well as other portions of the charge, very clearly, if not quite, invaded the province of the jury.

For the errors indicated the judgment is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.