### CHIATOVICH v. HANCHETT et al.

#### (Circuit Court, D. Nevada. July 11, 1898.)

#### No. 634.

1. LIBEL AND SLANDER—ACTIONABLE WORDS.
    A notice to the employés of a firm that a merchant was antagonistic to the firm, and requesting them to refrain from disclosing to him anything concerning their business, and saying, further, "And his expressed intentions being to hinder and embarrass us still further, * * * we especially request our employés to refrain from associating with him, either directly or indirectly, * * * and suggest that no one of our agents, representatives, or employés trade or deal with him in any manner whatever," is actionable, if charged with proper innuendoes.

2. SAME—PLEADING—INNUENDOES.
    A charge that defendants "meant and intended to convey" certain ideas by certain words is a sufficient innuendo, although it would be better pleading to aver, in direct terms, that the language was so understood by the persons reading it.

3. SAME—PLEADING—DAMAGES.
    An averment that certain named persons were induced to discontinue dealing with plaintiff, whereby he was damaged in a certain sum, is a sufficient allegation of special damages, without stating the purchases of each individual, or how much plaintiff would have profited in the aggregate but for the libel.

**4. SAME—DEMURRER.**
    The question whether or not defendant caused the libel to be published
is a question to be determined from the evidence, and not upon demurrer.

This was an action for libel, heard on a demurrer to an amended
complaint.

M. A. Murphy and Robert M. Clarke, for plaintiff.

Reddy, Campbell & Metson and Torreyson & Summerfield, for defendants.

HAWLEY, District Judge (orally). The amended complaint, after
stating that the plaintiff is, and for more than 25 years last past has
been, engaged in business as a merchant at Silver Peak, Esmeralda
county, Nev., and during all that time maintained a good reputation
for fair dealing, and has conducted and demeaned himself with honesty
and fidelity, alleges:

"(2) That on or about the 1st day of June, 1896, at Silver Peak, Esmeralda
county, state of Nevada, the defendants, L. J. Hanchett and L. E. Hanchett,
did cause to be typewritten, posted, and circulated, in and around said town.
the following words of and concerning this plaintiff:

" 'Notice to Our Employés.

" 'As John Chiatovich entertains 'for us feelings of animosity, and as his
actions have tended to interfere with our business, and his expressed inten-
tions are to hinder and embarrass us still further, we deem it advisable, in
our own interest, to abstain from all communication with him.  We es-
pecially request our employés to refrain from associating with him, either
directly or indirectly, and to disclose to him nothing that might tend to in-
dicate the present condition of our business.  We caution all against so
doing, and recommend a total absence of all communication.  We trust that
our employés will further our interests in this matter, which demand a total
cession of communication between us and him.  We respectfully enjoin our
people silence concerning ourselves, our business, and our property, and sug-
gest that no one of our agents, representatives, or employés trade or deal
with Chiatovich in any manner whatsoever.  His interests are so antago-
nistic to ours—his purpose is so manifestly hostile—that those who favor him
cannot complain if we consider them as equally unfriendly to us.
                                                " 'L. J. Hanchett, L. E. H.'
—"Which are the initials of L. E. Hanchett, the defendant above named.
    "(3) That the defendants meant thereby that this plaintiff was circulating
false and malicious reports of and concerning the business of these defend-
ants, and their manner and methods of conducting the same; and that this
plaintiff's conduct and manner of doing business was such that he was not a
fit or proper person for his neighbors to associate, communicate, or trade with.
    "(4) That the said words, so typewritten, published, posted, circulated, and
read, were a false, scandalous, malicious, and defamatory libel, so written, pub-
lished, posted, and circulated wrongfully and maliciously, by which the defend-
ants wished and intended to and did convey the idea, and to have it under-
stood and believed by those who would read, and did read, said notices, so
posted and circulated, that the plaintiff was dishonest, wanting in probity,
untruthful, and was wholly unfit and unworthy for his neighbors and friends
to associate or communicate with him; and that his place of business was not
a fit or proper place for the citizens and residents of the town of Silver Peak,
and the neighboring valleys, towns, and mining camps, to resort to, or to do
business in; and by means thereof the plaintiff has been and is greatly in-
jured and prejudiced in his good name, reputation, and credit, aforesaid,
to his damage in the sum of $10,000."

The complaint further alleges, in substance, that at the time said
notice was published the plaintiff's business was profitable, and that

in consequence of the publication of said notice his business was greatly injured; that all the employés of defendants, about 50 in number, whose names are given, quit trading and dealing with him, and withdrew their patronage, to his damage and loss in the sum of $10,-000.

To this complaint the defendants interpose a demurrer upon the following grounds:

"(1) That the notice alleged to have been posted, published, and circulated by defendants is not libelous or defamatory of plaintiff, and does not tend to impeach the honesty, integrity, virtue, character, or reputation of plaintiff, and does not tend to expose plaintiff to public hatred, contempt, or ridicule, nor does it set forth facts sufficient to constitute libel.

"(2) That the language of the notice alleged by plaintiff to be libelous is nonlibelous per se, and is incapable of a construction injurious to plaintiff's character or business, under the ordinary rules of accepted meaning of the English language, and is incapable of being extended in its meaning by colloquium or special averment.

"(3) That it does not show that the defendant L. J. Hanchett caused to be typewritten, posted, published, or circulated the alleged libelous notice set forth in plaintiff's amended complaint.

"(4) That it does not show that defendant L. E. Hanchett was authorized or instructed to sign or publish or print or post the said alleged libelous notice set forth in plaintiff's amended complaint.

"(5) That said amended complaint does not state the aggregate amount of purchases, or each individual amount, that the persons named in plaintiff's amended complaint would have purchased from the plaintiff, nor how much plaintiff would have profited in the aggregate, or from each person individually, had it not been for the alleged libelous notice set forth in plaintiff's amended complaint."

It is admitted by the plaintiff that the defendants had the right to give notice to their employes that plaintiff entertained feelings of animosity against them, and that they deemed it advisable to abstain from all communication with him, and to make the request that their employes should not disclose to him anything concerning the present condition of their business, and to keep silent concerning themselves, their business and their property. But the other portions of the notice are specifically claimed to be libelous. The most objectionable phrases being:

"And his expressed intentions are to hinder and embarrass us still further. * * * We especially request our employés to refrain from associating with him, either directly or indirectly, * * * and suggest that no one of our agents, representatives, or employés trade or deal with Chiatovich in any manner whatsoever."

Touching the merits, two main questions are presented: (1) Is the language used in the notice susceptible of any construction which would subject the plaintiff to public contempt, hatred, ridicule, or obloquy? (2) Is it susceptible of any construction which would impute to plaintiff any dishonesty in his dealings, impeach his credit or standing, or injure him in business as a merchant?

1. In Odgers, Lib. & Sland. 21, the author says that, in cases of libel, "any words will be presumed defamatory which expose the plaintiff to hatred, contempt, ridicule, or obloquy, which tend to injure him in his profession or trade, or cause him to be shunned or avoided by his neighbors, * * * and * * * all words * * * which, by thus engendering an evil opinion of him in the minds of

right-thinking men, tend to deprive him of friendly intercourse and society." Bailey v. Holland, 7 App. D. C. 184, 189; Rider v. Rulison, 74 Hun, 239, 26 N. Y. Supp. 234; Morey v. Association, 123 N. Y. 207, 210, 25 N. E. 161; Byram v. Aikin (Minn.) 67 N. W. 807; Baker v. State (Neb.) 69 N. W. 749, 751; State v. Norton, 89 Me. 290, 293, 36 Atl. 394; Newell, Defam. 67, 77; Townsh. Sland. & Lib. § 21, notes; 13 Am. & Eng. Enc. Law, 299. In the present case it is unnecessary to determine whether the portions of the publication to which the innuendoes relate are libelous per se or not. If libelous per se, there would be no need of any innuendoes (Turton v. Recorder Co., 144 N. Y. 144, 148, 38 N. E. 1009); and, if an innuendo was necessary, it is found in the complaint.

The question to be decided is whether or not the language used in the notice is susceptible of the construction placed upon it by the innuendoes of the complaint. Words must be construed with reference to their natural sense and ordinary meaning. Morgan v. Halberstadt, 9 C. C. A. 147, 60 Fed. 592, 594; Dun v. Maier, 27 C. C. A. 100, 82 Fed. 169, 173; Bettner v. Holt, 70 Cal. 270, 274, 11 Pac. 713. The language of the publication should not be forced beyond its ordinary meaning, in order to make it libelous. The courts do not seek to find an innocent meaning for words prima facie defamatory, and should not attempt to put a forced construction on words which by any reasonable construction may be fairly deemed harmless. Publishing Co. v. Mullen (Neb.) 61 N. W. 108. Nor will innuendoes be allowed to enlarge the meaning of the words. Dun v. Maier, 27 C. C. A. 100, 82 Fed. 169, 172; State v. Boos, 66 Mo. App. 537; Townsh. Sland. & Lib. § 342. The language of the notice is to be construed by the court in the sense in which the community at large might understand it, giving to the words used their ordinary meaning. The sense in which words are received by the world is the sense which courts of justice ought to ascribe to them. But it is always admissible to aver and prove that words alleged to be defamatory, which have a covert or ambiguous meaning, were intended and used with the object of defaming plaintiff, and were understood in that sense by those who read them. Maynard v. Insurance Co., 34 Cal. 48, 59; Edwards v. Publishing Soc., 99 Cal. 431, 435, 34 Pac. 128; People v. Collins, 102 Cal. 345, 36 Pac. 669; Mattice v. Wilcox, 147 N. Y. 624, 633, 42 N. E. 270. If the words published are fairly capable of two meanings, one harmless and the other defamatory, it is a question for the jury to determine from the evidence in what sense the persons to whom the notice was addressed, or persons who read the same, may have understood them. Twombly v. Monroe, 136 Mass. 464, 468; Publishing Co. v. Hallan, 8 C. C. A. 201, 59 Fed. 530, 539; Newell, Defam. 290; Odgers, Lib. & Sland. 94, 539, 544.

Applying these general principles to the case in hand, I am of opinion that the words used in the objectionable paragraphs of the notice might be susceptible of the meaning charged in the innuendoes of the complaint. Whether the publication was made as charged, or whether it was justified by the circumstances under which it was made, can only be properly determined when the facts in relation thereto are fully disclosed and presented to the court and jury. I am also of

the opinion that the averments in the innuendoes, as to the understanding of the parties reading the same, is sufficient, although it would have been better pleading to have averred in direct terms that the language was so understood by the parties to whom the notice was addressed.

2. Touching the second question, it seems clear that the tendency of the publication was to injure the plaintiff in his business as a merchant. The employes of the defendant must have understood the suggestion in the notice for them not to "trade or deal with Chiatovich in any manner whatsoever" as a notice that, if they did, they must abide the consequences of a discharge, because the notice further states that "his interests are so antagonistic to ours—his purpose is so manifestly hostile—that those who favor him cannot complain if we consider them as equally unfriendly to us." The law guards with jealous care the rights, privileges, property, and business of every person. It is well settled that damages may arise, not only out of injuries to the person, to his health, his liberty, or reputation, but also out of injuries to his property or his business. Any wrongful invasion of either is a violation of his legal rights. As a general rule, it may be said that every person has an absolute right to refuse to have any business relation with any particular person or persons. This proposition, however, in so far as it applies to cases like the present, must be confined and limited to the individual action of the men who assert the right. It is not true in law—although some authorities to that effect may be found—that one person having the right himself may, from his ill will, malice, revenge, or other evil motive, influence other persons to do the same thing. There are, of course, certain distinctions between damages caused by mere rivalry in business, without the intention of injuring the trade of the plaintiff, and those where such intent is shown with personal malice towards him,— questions which may or may not arise upon the trial of this case, but have nothing to do in determining the mere sufficiency of the averments of the complaint.

In Walker v. Cronin, 107 Mass. 555, 564, the court said:

"Every one has a right to enjoy the fruits and advantages of his own enterprise, industry, skill, and credit. He has no right to be protected against competition, but he has a right to be free from malicious and wanton interference, disturbance, or annoyance. If disturbance or loss come as a result of competition, or the exercise of like rights by others, it is damnum absque injuria, unless some superior right, by contract or otherwise, is interfered with. But if it come from the merely wanton or malicious acts of others, without the justification of competition, or the service of any interest or lawful purpose, it then stands upon a different footing, and falls within the principle of the authorities first referred to [which hold parties liable for the damages incurred]."

In Railway Co. v. Greenwood, 2 Tex. Civ. App. 76, 80, 21 S. W. 559, 561, where the questions involved bear directly upon this point, the court said:

"Did appellant have the right to prohibit its servants from patronizing appellee's hotel and saloon? If, in issuing the order or threat, it only exercised a legal right, it may be admitted that appellee cannot complain, though it resulted in loss to him, whatever may have been the motive with which the act was done. If appellant would have had the right to discharge its serv-

ants for doing the forbidden things, then it must follow that it could lawfully notify them that it would exercise it. It had the same right to discharge its servants as all masters have under similar conditions. This right was not to dismiss the servants arbitrarily or capriciously, but for reasonable causes only. Were the acts, the doing of which appellant declared to its servants should be the cause of their discharge, such as would justify the action which was threatened? The allegation is that the employés were threatened with discharge if they 'in any way patronized plaintiff, either by eating at his house or drinking at his bar.' We think it too plain that, as thus stated, there would have been no just ground for discharging the servants for doing what they were thus forbidden to do. This is charged to have been done maliciously, with intent to injure plaintiff. The employés, presumably, had the right to eat and drink where they chose, so long as they violated no contract with their employer and performed their service well, and the malicious use of such moral coercion upon them by the appellant as this petition alleges, for the purpose of injuring appellee, was wrongful, and made appellant liable for such damage as was thereby inflicted. Appellant did not have the right to intentionally induce others to abstain from patronizing appellee, except for a legitimate purpose."

The general tendency of the authorities is to the effect that published words which tend to injure a man in his trade, business, or occupation are actionable and libelous per se, and, unless the defendant lawfully excuses them, the injured party is entitled to recover without any allegation or proof of special damages. Easton v. Buck (Sup.) 48 N. Y. Supp. 158, 160; Moore v. Francis, 121 N. Y. 199, 204, 23 N. E. 1127; Mains v. Whiting, 87 Mich. 172, 180, 49 N. W. 559; Landon v. Watkins, 61 Minn. 137, 143, 63 N. W. 615, 617; Newell, Defam. 192 et seq.

In Moore v. Francis the court said:

"The principle is clearly stated by Bayley, J., in Whittaker v. Bradley, 7 Dowl. & R. 649: 'Whatever words have a tendency to hurt, or are calculated to prejudice, a man who seeks his livelihood by any trade or business, are actionable.' When proved to have been spoken in relation thereto, the action is supported, and, unless the defendant shows a lawful excuse, the plaintiff is entitled to recover without allegation or proof of special damage, because both the falsity of the words and resulting damage are presumed."

In Landon v. Watkins the court said:

"Under proper allegations in the complaint,—and there were such in this,—evidence of general diminution of profits and a loss of trade is admissible in an action for libel. Newell, Defam. 864; Starkie, Sland. & Lib. 313, 486 (426, 647). When the injury complained of is a loss of trade in ordinary cases from a libel, a general allegation of such loss is sufficient, and such allegation may be supported by evidence of such general loss."

But in this case special damages are alleged. The averments in the complaint with reference thereto are sufficient, without stating the aggregate amount of purchases by each individual, or how much plaintiff would have profited in the aggregate had it not been for the alleged libelous notice. Odgers, Lib. & Sland. 314; Newell, Defam. p. 867, §§ 41, 42.

3. The questions whether L. J. Hanchett caused the notice to be published, or whether L. E. Hanchett was authorized to publish the notice, are matters to be determined from the evidence. The demurrer is overruled.