## CHIATOVICH v. HANCHETT et al.

(Circuit Court, D. Nevada. September 4, 1899.)

### No. 634.

1. **LIBEL—WORDS USED WITH INTENT TO INJURE BUSINESS—MOTIVE.**
    While every individual has an absolute right to refuse any business relation with another, such right is limited to his own individual action; and if, without just cause, and through ill will, malice, or other evil motive, he influences others to do the same, he is guilty of an actionable wrong.

2. **SAME—INFLUENCING EMPLOYES.**
    The publication by employers of a notice to their employés suggesting that they refrain from associating with a third person, and that none of them should trade or deal with him, and intimating that if they did so they would be considered unfriendly to their employers, if made without justifiable cause, and from motives of wanton malice or ill will, and with intent to injure, is actionable; and the person injured is entitled to recover for the injury, both to his reputation and business.

3. **SAME—CONSTRUCTION OF PUBLICATION.**
    Such a notice is capable of a construction which is defamatory, and when proper innuendoes are contained in the complaint the defendants cannot complain of an instruction which submits the question whether or not it was defamatory to the jury, to be determined under all the facts and circumstances shown by the evidence.

4. **SAME—EVIDENCE.**
    On the question whether a publication was defamatory, it is competent for the plaintiff to show the understanding of the meaning of the words used by persons who read it, and who resided in the community and knew both the parties.

5. **SAME—MEASURE OF DAMAGES.**
    In an action for libel, in which plaintiff was entitled to recover damages for injury both to his reputation and his business, a verdict for $4,700 will not be held excessive.

On Motion for New Trial.

M. A. Murphy, for plaintiff.

Reddy, Campbell & Metson, for defendants.

HAWLEY, District Judge (orally). This is an action to recover damages for a libel. The jury found a verdict in favor of plaintiff for $4,700. The court at the trial, in the admission of evidence and in its charge to the jury, adhered closely to the views it expressed in overruling the demurrer to plaintiff's amended complaint. Chiatovich v. Hanchett, 88 Fed. 873. If any error occurred at the trial in either of these respects, the source of error will be found in that opinion. The contention of defendants is that the published notice was not libelous; that the words used therein are not in any sense defamatory, and cannot by the use of any innuendo be so construed; that by its publication no legal right of the plaintiff was invaded, and hence it is wholly immaterial what defendant's motives may have been. If we assume these premises to be correct, the conclusions reached by them would necessarily follow, because, if the defendants had the legal right to publish the notice, and it could not be construed to be defamatory, it would make no difference whether their motives were good or bad, whether they acted with or without malice,

or whether their acts resulted in benefit or damage to the plaintiff. A bad motive in doing an act which violates no legal right of another cannot make that act a ground of action. Motive alone is not enough to render the defendants liable for doing acts which they had the legal right to do, or, in the language of Judge Cooley, "an act which does not amount to a legal injury cannot be actionable because it is done with a bad intent." As was said by Black, J., in Jenkins v. Fowler, 24 Pa. St. 308, "malicious motives make a bad act worse, but they cannot make that a wrong which in its own essence is lawful." But if the notice could be construed as defamatory, and its publication did violate the legal rights of the plaintiff; if the defendants did acts which they had no legal right to do; if the acts performed by them amounted to a legal injury to plaintiff, and the publication of the notice was not a lawful exercise of their rights, but was in its own essence unlawful,—then the plaintiff could certainly maintain this action, and the court did not err in refusing to instruct the jury to find a verdict in favor of the defendants. The charge of the court must be construed in its entirety, and with special reference to the pleadings and the evidence given at the trial. In considering the objections urged by defendants, and reviewing the authorities cited by them, it must be borne in mind that there are no facts in this case which involve any question concerning the rights of protective labor associations, or the right of laborers to quit work at their will or pleasure, or the rights of employers to arbitrarily discharge their employés without assigning any reason therefor, and any discussion in regard thereto would be foreign to the issues here presented. The principles announced in the former opinion are fully supported by the authorities there cited, and will not be again discussed, except in so far as may be necessary in reviewing certain authorities cited by defendants which were not brought to the attention of the court at the time the opinion on demurrer was rendered. With these general observations, we will notice the specific points urged by counsel:

1. It is argued by the defendants that the court erred in its charge to the jury. The language of the court, which is claimed to be in conflict "with the weight of authority both in the United States and in England," is as follows:

"The law guards with jealous care the rights, privileges, property, and business of every person, and any wrongful or illegal invasion of either is a violation of his legal rights. The lawful exercise of a legal right is, of course, not actionable. It is undoubtedly true that every individual has the absolute right to refuse any business relation with any particular person or persons. But this general principle must be confined and limited to the individual action of the men who assert that right. It does not follow that any individual having that right can, from his own ill will, malice, revenge, or other evil motive, influence other persons to do the same thing. Every person has a right to enjoy the fruits and advantages of his own enterprise, industry, skill, and credit. He has no right to be protected against competition, but he has a right to be free from malicious, wanton interference, disturbance, or annoyance. If a loss comes as a result of competition, or the exercise of a like right by others, it is damnum absque injuria (damage without injury). But if it comes from the mere wanton or malicious acts of others, without the justification of competition or the service of any interest or lawful purpose, it then stands upon a different footing, and entitles him to recover damages for the malicious acts, should you consider them to be so."

Counsel admit that "the wrongful invasion of a right is actionable," and that "the lawful exercise of a legal right is not actionable." To this extent, at least, there is no disagreement between the learned counsel and the court. The next sentence in the charge is certainly not prejudicial to the rights of the defendants. It was inserted at their request, and is sound law. The objections to be considered must therefore be confined to that portion of the charge which limits the application of the general rule therein stated. Upon this point counsel cite Allen v. Flood, decided in the house of lords, and found in 46 Wkly. Rep. 258. The house of lords was divided in opinion. A majority held that the existence of a bad motive is immaterial, when considering whether an act is a civil wrong or not; that to induce employers, therefore, to dismiss their workmen and not to employ them in the future, in consequence of which the workmen suffer loss, is not, where no breach of contract is involved, a wrongful act, whatever the motive for doing it may be. The litigants in that case were members of two rival associations of workingmen. The case, in its facts, is totally dissimilar from the case at bar. Labored efforts were made in the prevailing opinions to distinguish it from the cases where the courts of England had previously held that intimidation, obstruction, molestation, or intentional procurement of a violation of individual rights, where there is no just cause for it, are each of them, where damage has been caused, actionable wrongs. Upon this point, as well as others, there was a wide divergence of opinion. The expressions used therein which are claimed to be adverse to the charge of the court herein had reference to the peculiar facts of that particular case, and hence the principles therein announced cannot be considered as applicable to a case like this, involving an entirely different state of facts. The general principles announced in Beck v. Protective Union (Mich.) 77 N. W. 13, 25 (which reviews Allen v. Flood), in so far as they are applicable, are in accord with the charge of the court under consideration. In the course of the opinion the court said:

"The case of Allen v. Flood is a forcible illustration of the difficulty, even in judicial minds, to agree. That case was really a contest between two labor unions,—the Shipwrights' Provident Union and a society of boiler makers and iron workers. The latter denied the right of shipwrights to do iron work upon vessels. The Glengall Company, for which both parties were at work, had a contract to repair a ship. Forty iron workers and the plaintiffs, Flood and Taylor. shipwrights, were at work on the job. The iron workers learned that plaintiffs had just before worked on a similar job, where they did iron work, and called in Allen, their district delegate. Allen informed the agents of the Glengall Company that the iron workers would quit work unless they discharged plaintiffs. The company discharged plaintiffs, but in doing so violated no contract, as they had the right to discharge them at any time. They, however, had an expectancy of continued employment, and, but for the statement of Allen, would have been retained. Flood and Taylor sued Allen in tort. A recovery was had in the trial court. The case was taken to the court of appeals, and sustained by a unanimous decision. It was then appealed to the house of lords, and the opinions of eight judges were presented, six of whom were for sustaining the judgment. Of the nine lords, six were against the judgment, and three for it. Of the twenty-one judges and lords, thirteen held the action of Allen to be an unlawful interference with the freedom of labor, and actionable. This case, therefore, to other courts than those of England, is mainly instructive in the learned and exhaustive opinions ren-

dered. The majority of the lords appear to have based their opinion upon the fact that there was no conspiracy, that the Glengall Company had violated no contract in discharging plaintiffs, and that the iron workers had the right to leave, and threaten to leave, their employment for any reason whatever."

Counsel cite Heywood v. Tillson, 75 Me. 225, in support of their position. It does not sustain them. Like Allen v. Flood, supra, the facts in the case are so radically different that it cannot be considered as an authority against the correctness of the charge in the present case. The failure to observe the distinction between the different classes of cases leads to confusion, doubt, and uncertainty. Courts are constantly compelled, in searching for light in order to reach the ends of justice, to carefully examine the facts upon which the apparent differences in the opinions are founded; and quite often, in order to prevent any doubt or uncertainty as to their own views, they state both sides, and show the distinctions which exist in regard thereto. Thus, in Vegelahn v. Guntner, 167 Mass. 92, 98, 44 N. E. 1077, the court said: "A combination among persons merely to regulate their own conduct is within allowable competition, and is lawful, although others may be indirectly affected thereby. But a combination to do injurious acts expressly directed to another, by way of intimidation or constraint, either of himself, or of persons employed or seeking to be employed by him, is outside of allowable competition, and is unlawful,"—and classed Heywood v. Tillson within the former class, and the case it had under consideration within the latter class. The case in hand does not, in my opinion, fall within the former class, and is not, therefore, in opposition to Heywood v. Tillson. Counsel also cite and rely upon the principles announced in Orr v. Insurance Co., 12 La. Ann. 255. That case, viewed in the light of the facts there presented, is not in opposition to the views expressed in Chiatovich v. Hanchett, supra, and repeated in the charge of the court. The distinction between the facts in Orr v. Insurance Co. and a case like the present is clearly pointed out in Graham v. Railroad Co., 47 La. Ann. 215-217, 16 South. 806, which is an additional authority, if any is needed, in support of the correctness of the charge of the court given in the present case. The court, after commenting upon the case of Orr v. Insurance Co., said:

"The issue before us is whether, while the plaintiff, engaged in a lawful business, is legitimately earning his livelihood by and through the custom and patronage of others, the defendant, a corporation, and its foreman, having the power of employing and discharging large numbers of persons, can, without incurring legal liability therefor, without justifiable cause, and moved solely by a malicious and wanton intent and design to injure the plaintiff, use their power of employment and discharge upon persons seeking employment from them, or already in their employ, so as to cause those who are already dealing with the plaintiff to desist from further doing so, and those who would desire to do so from carrying out their wishes, by threats of nonemployment or discharge. In so doing the defendant would not only control their own will, action, and conduct, but forcibly control and change, from pure motives of malice, the choice and will of others, through fear of nonemployment or discharge. This will and power of choice both the plaintiff and the parties themselves are entitled to have left free, and not have coerced in order simply to work the former damage and injury."

See, also, Delz v. Winfree (Tex. Sup.) 16 S. W. 111.

2. It is next claimed that the court erred in submitting the question whether certain language used in the notice was defamatory or not. The objections urged upon this motion do not call in question the general views expressed in the former opinion upon the demurrer, except the expression of the court, "that the words used in the objectionable paragraphs of the notice might be susceptible of the meaning charged in the innuendoes of the complaint."

At the trial the court charged the jury that:

"The complaint in this case specifies two different grounds upon which plaintiff seeks to recover damages: First, injury to plaintiff's reputation; second, injury to his business as a merchant."

After calling the attention of the jury to the language used in the published notice, the charge continues:

"And in relation to this matter I instruct you that any words will be presumed defamatory which subject the plaintiff to hatred, contempt, ridicule, or obloquy, or cause him to be shunned or avoided by his neighbors, and all words which by their ordinary meaning engender an evil opinion in the minds of right-thinking men, and tend to deprive him of friendly intercourse and society. I further instruct you that the words must be construed with reference to their natural sense, true import, and ordinary meaning; that the innuendo in the complaint cannot enlarge, extend, or change the natural import, sense, or meaning of the words; that the publication in its entirety is to be construed by the jury in the sense in which the community at large might and did understand it. Where the words, as published, are fairly capable of two different meanings (the language I have just quoted from the notice, in my opinion, is susceptible of two different meanings), one harmless and the other defamatory, it is a question of fact for the jury to determine from all the evidence in the case in which sense, within the meaning of the words, the persons to whom the notice was addressed, or persons who read the same, may have understood them. The burden of proof is upon the plaintiff to show that within these rules it was defamatory. If you believe from the evidence that the notice was posted by or under the directions of the defendants without any intention to injure the plaintiff's reputation, and that within its ordinary meaning, as understood by those to whom it was addressed, and other parties who read the same, it was not defamatory, it is your duty to find a verdict for the defendants. But if the jury believe from the language used and contained in the notice that, taken in connection with the entire publication, and with all the surrounding facts and circumstances testified to upon this trial, it is defamatory, within the ordinary meaning, as understood by those to whom it was addressed, and that it was false, and that plaintiff, in his reputation and good name, was injured thereby, it will be your duty to find a verdict in favor of the plaintiff, and assess such damages as you believe to be just and proper in the premises, under the evidence."

Was not this portion of the charge, as well as the other, as favorable to the defendants as the law would warrant? What did defendants mean when they suggested in the published notice to their employés "to refrain from associating with him [Chiatovich], either directly or indirectly, * * * and suggest that no one of our agents, representatives, or employés trade or deal with Chiatovich in any manner whatsoever. His interests are so antagonistic to ours, his purpose is so manifestly hostile, that those who favor him cannot complain if we consider them as equally unfriendly to us"? Is there not an intimation or insinuation, in the former part of this notice, that Chiatovich is not a fit or proper person for the employés of Hanchett to associate with? Is not the language used at least susceptible of this meaning? Does not the latter portion convey the idea, and

clearly intimate, that if any of their employés did associate, trade, or deal with Chiatovich in any manner, they would be discharged? Can any other meaning be given to it? There was no use of any direct threat. No need of any stronger language. It is idle to say there was no coercion, no intimidation. The law does not favor subterfuges. In searching for the truth, we must pierce through the surface covering, however disguised it may be, in order to ascertain the actual facts and determine the true meaning of the words. Threats in direct language are not the only threats that the law recognizes. Covert or unpublished threats may be just as effective as if published in direct terms. The employés knew what was meant. It is unnecessary to review the testimony. It makes no difference, so far as plaintiff's right of recovery is concerned, that some of the employés disobeyed the request and were not discharged. The fact remains that several of them, on account of said publication, withdrew their patronage from Chiatovich, and some of them declined to have any further association with him. There was a loss and injury to plaintiff clearly proven. Charges intended to reflect upon a man's character are seldom made in a direct, open manner. It is often the case, in actions of this character, that the sting of the words used is found in the imputation or inference which they convey, and were intended to convey. There may be a covert or hidden meaning which could only be fully understood by the community where the publication was made. Words used in a publication, even when not actionable in and of themselves, may become so when spoken of the business, profession, or occupation of the person to whom they were directed. In addition to authorities cited in former opinion, see Fitzgerald v. Robinson, 112 Mass. 371, 381; Morasse v. Brochu, 151 Mass. 568, 574, 577, 25 N. E. 74; Ellsworth v. Hayes, 71 Wis. 428, 434, 37 N. W. 249. If there was any error committed by the court, it was in charging the jury that the words in the former part of the notice "were susceptible of two different meanings, one harmless and the other defamatory," instead of stating that the language used in the notice was libelous per se. The jury by their verdict found that the words used were defamatory. They had the whole case, with all of its surrounding facts and circumstances, before them. I am unwilling to say that their conclusion, impartially and fairly arrived at, is not supported by the facts. The defendants had the opportunity to show, if they could, that the words used by those who read the notice were understood by them in a harmless, and not defamatory, sense. No such testimony was given. Hearne v. De Young, 119 Cal. 670, 678, 52 Pac. 150, 499, is relied upon by defendants as establishing the fact that the court erred in allowing plaintiff to introduce witnesses living in the community, who knew both parties, who read the notice, to give testimony as to their understanding of the meaning of the words contained in the notice. It does not go to that extent. There the witnesses "knew nothing of the parties or the circumstances, save what they gathered from the publication. Their conclusions were based alone upon reading of the article, and under such conditions the jurors were as competent to arrive at a correct conclusion as to the meaning of the publication as were these witnesses." The prin-

ciple decided in that case contains an element of fact that does not exist in this case, and is not in opposition to the ruling of this court in the admission of evidence.

3. No instructions were given to the jury which by any ingenuity of counsel can be construed as being in opposition to the definition of a libel as contained in section 4672, Gen. St. Nev. Moreover, that section refers to criminal actions, and was not intended to limit or deny the right of plaintiff in a civil action to recover damages for published words which tend to, and do, injure a man in his trade, business, or occupation.

4. The charge given by the court was intended to cover all of the essential points which had any controlling effect in this case, in such a manner as to be instructive to the jury. If it did, it was unnecessary to repeat the same in the language asked for by counsel. Unless the charge as given was radically wrong, it cannot be said that the court erred in refusing to give any of the numerous instructions asked by defendants' counsel. I am of opinion that the charge of the court in its entirety is correct.

5. Finally it is claimed that the verdict is too large, that it is "out of all reason, and is so excessive as to cause the court to cut the same down to a nominal sum only." The argument is that the loss in the profits of plaintiff's business was very slight; but the jury were called upon, if they believed the notice to be defamatory, to assess the damage and injury to plaintiff's reputation as well as loss and damage to his business. The jury were instructed that:

"Damages are the indemnity recoverable by a person who has sustained an injury to his reputation by the wrongful or malicious act of another or others. You should allow the plaintiff such damages, if from the instructions and evidence you believe him to be entitled to recover, as will fully compensate him for all injury he has received, resulting from the publication, as in your honest belief and best judgment will be reasonable, fair, and just. No more, no less."

Under the facts of this case, I am unable to say that the damages were so excessive as to indicate any passion or prejudice on the part of the jury. I decline, for the reasons stated, to disturb the verdict. The motion for a new trial is denied.